COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

HUMBERTO GALLEGOS JUAREZ,                   )

                                                                              )              
No.  08-03-00343-CR

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )                
358th District Court

THE STATE OF TEXAS,                                     )

                                                                              )             
of Ector County, Texas

Appellee.                           )

                                                                              )                  
(TC# D-30,257)

                                                                              )

 

 

O
P I N I O N

 

Appellant Humberto
Gallegos Juarez was indicted for the murder of Efrain Zamudio.  The jury found Appellant guilty of the lesser-included
offense of manslaughter and assessed punishment at 20 years= imprisonment in the Institutional
Division of the Texas Department of Criminal Justice and a fine of
$10,000.  Appellant brings four
issues on appeal, in which he argues the trial court erred in charging the jury
on the lesser-included offense, challenges the legal and factual sufficiency of
the evidence to support the manslaughter conviction, and contends the trial
court erred in entering an affirmative deadly weapon finding in the
judgment.   We affirm. 








In the early hours
of August 3, 2002, the Odessa Police Department received a 911 call about a
stabbing at an Odessa residence. 
Detective Rick Henegar was the first officer at the scene.  There were about six people in the front
yard, screaming and yelling that someone had been stabbed.  He and another officer saw blood on the
ground and blood on the steps as they entered the front door of the house.  The officers found the victim, Efrain
Zamudio, lying in the corner of the garage.  The victim=s
brother, Ernest, was kneeling down beside him, attempting to resuscitate
him.  Detective Henegar observed
that the stab wound was near the center of the victim=s
chest.

Efrain was
transported to the hospital by emergency personnel.  He did not respond to resuscitation
efforts and there was no active bleeding from the stab wound.  Four hours later Efrain was pronounced
dead.  Forensic pathologist Dr.
Sridhar Natarajan later determined that a single three-four inch stab wound to the
chest and into the victim=s
heart was the cause of death. 
Dr. Natarajan testified that if a person was swinging a knife, that
action would be more consistent with a slashing-type wound, unless at the
beginning of the swing, the body was directly impacted.  In that case, the knife would probably
impinge deep into the body.  

Detective Buzzy
Abalos of the Metro Homicide Unit of the Odessa Police Department  was assigned as lead investigator and
reported directly to the crime scene. 
Detective Abalos interviewed several people who he had identified as
witnesses.  Based on his
investigation, Detective Abalos arrested Appellant later that day, about eight
or nine hours after the stabbing took place.








At trial, the
State called several witnesses who had been at the scene before and/or after
the stabbing occurred.  Maribel
Garcia , the victim=s sister,
testified that she, the victim, and her two young children were living at the
residence at the time.  Appellant
was one of Ms. Garcia=s
coworkers at the Avalon Place Nursing Home.  Appellant and fellow coworker Joey
Tercero were visiting her residence when she and her sons arrived home that
Friday night.  Her brothers Efrain,
Ernest, and Roy (aka ANino@) Garcia , Roy=s
girlfriend, and some of the girlfriend=s
friends were also present.  Tercero
was a regular visitor, but Appellant had only been to the house on one prior
occasion, the weekend before, at which time he and the brothers Aexchanged words.@  During this visit, Ms. Garcia=s brothers and their friends were in
Efrain=s room
while she, Appellant, and Tercero were in the living room.  Ms. Garcia recalled that every now and
then Appellant would pull out a pocket knife for some unknown reason.  All the adults were drinking and at some
point a dispute arose between Appellant, Tercero, and Ms. Garcia=s brothers and they ended up outside in
the front yard.  No one pulled any
weapons in this first confrontation.[1]  When Appellant and Tercero were leaving,
Ms. Garcia tried to calm Appellant down. 
Ms. Garcia left with Appellant and Tercero in Tercero=s car and went to an apartment
complex.  Both Ms. Garcia and
Appellant exited the car.  Ms.
Garcia did not know where Appellant went.[2]  Later, Ms. Garcia wanted to go
home.  Tercero would not give her a
ride home, so she walked about three miles to get home.  The police had just arrived at her home
when she made it back.








Ernest Zamudio,
brother of the deceased, testified that the second confrontation began about an
hour or two after Ms. Garcia had left with Appellant and Tercero.  Appellant returned to the house with two
males and two females.  They knocked
on the door and Francisco Ramos and brother Efrain went up to the door.  Ernest heard them arguing and went
outside.  He asked them to leave.  Instead, they continued talking and
Ernest again ordered them to get off the property or else he would call the
police.  Appellant had a knife in
his hand and the accompanying male next to him had a bat in his hand.  No one else was armed with a weapon.  Ramos was struck in the head with the
baseball bat.  Ernest swung and hit
somebody with a beer bottle.  Ernest
was struck in the face by a fist. 
He fell back when he was hit and did not see anything else that happened
during the fight.  Ramos testified that
he did not see when Efrain was stabbed either.  

After Appellant
was arrested at his residence, Detective Abalos and Detective Darryl Smith
interviewed him at the police department about the incident.  Detective Abalos testified that after
reading him the Miranda warnings, Appellant told them about the knife
and the baseball bat.  Appellant
later took them to where the knife was located.  DNA testing of blood found on the knife showed
a positive match to the victim=s
blood.  








Appellant did not
testify, but his videotaped statement was admitted into evidence.  In the transcribed statement, Appellant
confirmed that he and Tercero went to Ms. Garcia=s
house around 11:20 a.m. on August 2, 2002. 
They were there a couple of hours drinking and visiting with Ms.
Garcia.  One of her brothers,
apparently Roy, started arguing with him and he and Tercero decided to
leave.  The brother followed
Appellant outside, trying to continue the confrontation.  Tercero stepped in between them to calm
the situation.  The other brothers
tried to push Appellant to fight, but Appellant told one of the brothers that
he did not want any problems. 
Ms. Garcia jumped in the car when they tried to rush him and they
left.  

Initially,
Appellant stated that in the second confrontation they rushed him when he
returned to retrieve his baseball cap. 
He hit someone with the bat, breaking it, but denied having a knife or
stabbing the victim.  He later
admitted that when he, Tercero, and Ms. Garcia left, he was angry and he wanted
a one-on-one fight with the brother who wanted to fight him.  Tercero drove him to look for his friend
Shannon at the apartment complex. 
Appellant knocked on the door, but he was not there.  When he returned to the car, Ms. Garcia
had already left.  Tercero dropped
him off and Appellant later returned to Ms. Garcia=s
house.  He maintained that he went
back for his hat, but also wanted to apologize for the earlier incident.  Appellant stated that Awhen they all rushed me . . . I got
that bat.  I hit one of em [sic]
with it.  After that, I took out the
knife.@  Appellant stated that he took the knife,
A[f]rom my pocket . . . and just swung
it.@ 
He said he did not know who he stabbed because they rushed him so fast
and he just swung the knife.  He
also stated that he did not feel it hitting anyone.  Appellant later admitted that his
brother Jose Juarez and friend Shannon Sotelo accompanied him to Ms. Garcia=s house the second time.[3]








In Issue One,
Appellant argues the trial court erred by instructing the jury on the
lesser-included offense of manslaughter. 
Appellant asserts there is no evidence in the record that Appellant
acted recklessly, instead the evidence shows he acted intentionally and knowingly.  The charge conference does not appear in
the record and there was no discussion of the manslaughter instruction when the
trial court requested any objections to the charge.  Appellant did not object to the charge
on this basis.  The trial court has
the legal duty to instruct the jury on the law applicable to the case.  See Tex.Code Crim.Proc.Ann. art. 36.14 (Vernon Supp.
2004-05).  In discharging this duty,
the trial court is authorized to sua sponte include a charge on a lesser
offense; a trial court is not restricted to submitting lesser included offenses
only when the defendant has properly requested them.  Ford v. State, 38 S.W.3d 836, 840
(Tex.App.--Houston [14th Dist.] 2001, pet. ref=d).  Since Appellant did not object to the
instruction, if it was unwarranted, then the issue is one of charge error and
Appellant must show that the error caused him egregious harm.  See id. at 841; Almanza v.
State, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984).








An instruction on
a lesser-included offense is proper when: 
(1) the lesser-included offense is included within the proof necessary
to establish the offense charged; and (2) there is some evidence in the record
that would permit a jury to rationally find that if the defendant is guilty, he
is guilty only of the lesser offense. 
Rousseau v. State, 855 S.W.2d 666, 672 (Tex.Crim.App.), cert.
denied, 510 U.S. 919, 114 S.Ct. 313, 126 L.Ed.2d 260 (1993); Avila v.
State, 954 S.W.2d 830, 842 (Tex.App.--El Paso 1997, pet. ref=d).  Appellant does not dispute that
manslaughter is a lesser-included offense of murder.  See Moore v. State, 969 S.W.2d 4,
9 (Tex.Crim.App. 1998).  The issue,
therefore, is whether any evidence exists in the record that would permit a
rational jury to find that if guilty, Appellant is guilty only of manslaughter.  See Bignall v. State, 887 S.W.2d
21, 24 (Tex.Crim.App. 1994).  An
accused is guilty only of a 

lesser-included offense if:  (1) there is more than a scintilla of
evidence that either affirmatively refutes or negates an element of the greater
offense; or (2) the evidence on the issue is subject to two different
interpretations, one of which negates or rebuts an element of the greater.  Schweinle v. State, 915 S.W.2d
17, 19 (Tex.Crim.App. 1996); Ramirez v.State, 976 S.W.2d 219, 227
(Tex.App.--El Paso 1998, pet. ref=d).  To satisfy the second Rousseau
prong, it is not enough that the jury disbelieves evidence pertaining to the
greater offense; rather, there must be some evidence directly germane to the
lesser-included offense to warrant its submission.  See Hampton v. State, 109 S.W.3d
437, 441 (Tex.Crim.App. 2003).

Here, Appellant
was charged with intentionally and knowingly causing the death of Efrain
Zamudio, by stabbing him with a deadly weapon, to wit:  a knife.  See Tex.Pen.Code Ann. '
19.02(b)(1)(Vernon 2003); Tex.Pen.Code
Ann. ' 6.03(a),
(b)(Vernon 2003).  The jury was also
charged on the lesser offense of manslaughter.  A person commits manslaughter if he
recklessly causes the death of an individual.  Id. at '
19.04(a).  A person acts recklessly,
or is reckless, with respect to circumstances surrounding his conduct or the
result of his conduct when he is aware of but consciously disregards a
substantial and unjustifiable risk that the circumstances exist or the result
will occur.  Id. at ' 6.03(c).  The risk must be of such a nature and
degree that its disregard constitutes gross deviation from the standard of care
that an ordinary person would exercise under all the circumstances as viewed
from the actor=s
standpoint.  Id.  Appellant asserts there is no evidence
that he acted recklessly.  We
disagree.








In Appellant=s videotaped statement, he insisted
that he went back to Ms. Garcia=s
house for the purpose of retrieving his hat and to apologize for the earlier
confrontation.  He denied going there
for a fight.[4]  When the occupants rushed him, he took
out his knife and Ajust
swung it.@  It did not feel to him that the knife
had hit anyone.  When he and his
companions left the scene, he did not think anyone had been stabbed.  He also denied seeing any blood on the
knife before he threw it away. 
Thus, there is some evidence that Appellant did not intend the resulting
death from his conduct, but instead acted recklessly in respect to
circumstances surrounding his conduct. 
We conclude there was more than a scintilla of evidence from which the
jury could have reasonably inferred that Appellant did not have the mens rea
to commit murder.  Further, this
same evidence clearly rebutted the elevated culpable mental state required for
the offense of murder.

Appellant also
argues that submission of his defensive issue of self-defense supports his
contention because one cannot act recklessly in an act of self-defense.  See, e.g., Martinez v. State,
16 S.W.3d 845, 848 (Tex.App.--Houston [1st Dist.] 2000, pet. ref=d); Avila, 954 S.W.2d at
843.  However, if there is some
evidence in the record supporting the submission of both 

self-defense and manslaughter, the
trial court may submit both issues to the jury.  O=Brien
v. State, 89 S.W.3d 753, 755-56 (Tex.App.--Houston [1st Dist.] 2002, pet.
ref=d). 

We conclude that
both prongs of Rousseau are satisfied based on the facts in the
record.  Therefore, the trial court
did not err in instructing the jury on the lesser-included offense of
manslaughter.  Issue One is overruled.








In Issues Two and
Three, Appellant challenges the legal and factual sufficiency of the evidence
to sustain his conviction for manslaughter.  In response, the State argues that
Appellant is estopped from raising his complaint because he failed to object to
submission of the 

lesser-included offense, citing Bradley
v. State, 688 S.W.2d 847, 853 (Tex.Crim.App. 1983) (discussing the estoppel
rule that if a defendant requests or does not object to the lesser-included
offense instruction, he is estopped from complaining on appeal that the
evidence is insufficient to establish the elements of the lesser-included
offense).  In State v. Lee,
818 S.W.2d 778 (Tex.Crim.App. 1991), overruled on other grounds, Moore
v. State, 969 S.W.2d 4 (Tex.Crim.App. 1998), the Court of Criminal Appeals
confirmed its reasoning in Bradley and held Athat
by invoking the benefit of the lesser included offense charge at trial in not
objecting to its submission to the jury, and in fact by requesting that such
instructions be included, appellant is estopped from then complaining on appeal
that the evidence failed to establish all the elements of that lesser offense.@ 
Lee, 818 S.W.2d at 781. 
The Court=s holding
in Lee has been applied to bar legal and factual sufficiency review in
cases involving lesser-included offense other than voluntary manslaughter.  See, e.g., Otting v. State,
8 S.W.3d 681, 687 (Tex.App.--Austin 1999, pet. ref=d,
untimely filed).








Even if the rule
pronounced in Lee does not bar Appellant=s
sufficiency claims, we find that the evidence was both legally and factually
sufficient to sustain his conviction. 
In reviewing the legal sufficiency of the evidence, we view the evidence
in the light most favorable to the verdict to determine whether any rational
trier of fact could have found the essential elements of the offense beyond a
reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed. 560
(1979); Burden v. State, 55 S.W.3d 608, 612 (Tex.Crim.App. 2001). We do
not resolve any conflict of fact, weigh any evidence, or evaluate the
credibility of any witnesses, as this was the function of the trier of
fact.  See Adelman v. State,
828 S.W.2d 418, 421 (Tex.Crim.App. 1992); Matson v. State, 819 S.W.2d
839, 843 (Tex.Crim.App. 1991). 
Instead, duty is to determine whether both the explicit and implicit
findings of the trier of fact are rational by viewing all the evidence admitted
at trial in the light most favorable to the verdict.  See Adelman, 828 S.W.2d at
421-22.  In so doing, any
inconsistencies in the evidence are resolved in favor of the verdict.  Matson, 819 S.W.2d at 843.

In reviewing the
factual sufficiency of the evidence, we must determine whether considering all
the evidence in a neutral light, the jury was rationally justified in finding
guilt beyond a reasonable doubt.  Zuniga
v. State, 539-02, 2004 WL 840786, at *7 (Tex.Crim.App. April 21, 2004); see
also Clewis v. State, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996).  There are two ways in which we may find
the evidence to be factually insufficient. 
Zuniga, 2004 WL 840786, at *7.  Evidence is factually insufficient when
the evidence supporting the verdict, considered alone, is too weak to support
the finding of guilt beyond a reasonable doubt.  Id.  Evidence is also insufficient when
contrary evidence is so strong that guilt cannot be proven beyond a reasonable
doubt.  Id.  However, in our factual sufficiency
review, we must give appropriate deference to the jury and should not intrude
upon its role as the sole judge of the weight and credibility given to evidence
presented at trial.  See Johnson
v. State, 23 S.W.3d 1, 7 (Tex.Crim.App. 2000); Clewis, 922 S.W.2d at
133.  Accordingly, we are authorized
to set aside the jury=s
finding of facts only in instances where it is manifestly unjust, shocks the
conscience, or clearly demonstrates bias. 
Clewis, 922 S.W.2d at 135. 
An opinion addressing factual sufficiency must include a discussion of
the most important and relevant evidence that supports the appellant=s complaint on appeal.  Sims v. State, 99 S.W.3d 600, 603
(Tex.Crim.App. 2003). 








Here, Appellant
does not dispute that he stabbed the victim in this case.  Further, the evidence shows that the
victim=s blood
was found on the knife recovered. 
As discussed in the preceding issue, there is strong inferential
evidence that Appellant acted with the culpable mental state of recklessness.

Appellant points
out that Dr. Natarajan testified that the wound path showed that Athe instrument came from front to back,
left to right, and that it was slightly downward in its injection.@ 
While Dr. Natarajan indicated that someone swinging a knife does not
make this type of wound, the pathologist also stated that the Aswing may be more consistent with a
type of slashing wound, unless at the beginning of your swing you directly
impact the body, at which time it would probably impinge deep into the body.@ 
Dr. Natarajan=s
characterization of the deceased=s
wound does not affirmatively support Appellant=s
contention that he acted intentionally and knowingly.  Likewise, testimony from child witness
R.T. that Appellant stabbed Efrain, is not contrary evidence so strong that the
beyond-a-reasonable doubt standard could not have been met. 

Considering all
the evidence in the light most favorable to the verdict, we conclude that any
rational trier of fact could have found that Appellant committed the offense of
manslaughter beyond a reasonable doubt. 
Furthermore, viewing the evidence in a neutral light, we conclude 

that the evidence of guilt,
considered alone, is not too weak to support the guilty finding beyond a
reasonable doubt nor is the contrary evidence strong enough that the
beyond-a-reasonable doubt standard was not met.  Therefore, we find that the evidence is
both legally and factually sufficient to sustain Appellant=s conviction.  Issues Two and Three are overruled.








In Issue Four,
Appellant contends the trial court erred in entering an affirmative deadly
weapon finding in the judgment.

Upon an
affirmative finding that the defendant used or exhibited a deadly weapon during
the commission of the felony offense, the trial court shall enter that finding
in the judgment of the court.  See
Tex.Crim.Code Proc.Ann. art.
42.12, ' 3g(a)(2)(Vernon
Supp. 2004-05).  An affirmative
finding of a deadly weapon means the trier of fact expressly determined that a
deadly weapon or firearm was actually used or exhibited during the commission
of the offense.  See Polk v.
State, 693 S.W.2d 391, 393 (Tex.Crim.App. 1985).








Generally, the
trial court is authorized to enter a deadly weapon finding when:  (1) the indictment includes an
allegation of a deadly weapon specifically pled and the verdict states the
defendant is guilty as charged in the indictment; (2) the indictment does not
allege a deadly weapon, but the weapon pled is per se a deadly weapon or
a firearm, and the verdict states the defendant is guilty as charged in the
indictment; or (3) the jury has affirmatively answered a special charge issue
on use or exhibit of a deadly weapon. 
See id. at 393-94. 
Alternatively, courts may look to the application paragraph of a
lesser-included offense to determine if the express deadly weapon allegation in
that portion of the jury charge matches the deadly weapon allegations in the
indictment for the charged offense. 
Lefleur v. State, 106 S.W.3d 91, 94 (Tex.Crim.App. 2003).  If so, the trial court may enter a
deadly weapon finding in the judgment based upon the jury=s verdict of guilt on the lesser-included
offense.  Id.  The indictment, the jury charge,
verdict, and judgment are all relevant sources to consider in determining
whether a jury made an express deadly weapon finding.  Id. at 98.  However, when neither the indictment nor
the jury charge contain any deadly weapon language, a trial court cannot enter
an Aimplied@
deadly weapon finding based solely upon its own assessment of the evidence and
a general Aguilty@ verdict.  Lefleur, 106 S.W.3d at 95. 








In this case, the
indictment under which Appellant was charged with murder contained two
paragraphs.  The first paragraph
alleged that Appellant did Aintentionally
and knowingly, cause the death of an individual, namely Efrain Zamudio, by
stabbing him with a deadly weapon, to wit: 
a knife.@  The second paragraph alleged that
Appellant did,Aintending
to cause serious bodily injury to Efrain Zamudio, intentionally and knowingly
commit an act clearly dangerous to human life, namely stabbing him with a
deadly weapon, to wit:  a knife,
which caused the death of the said Efrain Zamudio.@  The jury charge did not include the
second theory of prosecution alleged by the State in the indictment.  The jury charge application paragraph
for manslaughter stated, A[n]ow
if you believe from the evidence beyond a reasonable doubt that on or about the
3rd day of August, 2002, in Ector County, Texas, the Defendant, HUMBERTO
GALLEGOS JUAREZ, did then and there recklessly caused the death of an
individual, Efrain Zamudio, by stabbing him with a deadly weapon, to wit:  a knife then you will find the Defendant
guilty of Manslaughter.@  The jury found Appellant guilty of the
lesser offense by a verdict reading, AWe,
the jury, find the Defendant, HUMBERTO GALLEGOS JUAREZ, guilty of the offense
of Manslaughter.@  The indictment and the charge on
manslaughter both contain explicit and express deadly weapon allegations.  The jury found Appellant guilty on the
lesser-included offense of manslaughter. 
The jury=s verdict
necessarily included a finding that Appellant used a deadly weapon because the
application paragraph for the manslaughter offense required the fact finder to
determine that a deadly weapon was used. 
Appellant argues that the criteria set out in Lefleur has not
been met because a knife is not a deadly weapon per se.  However, we find nothing in Lefleur
that suggests its analysis is limited to cases involving  per se deadly weapons.  We conclude the trial court did not err
when it entered an affirmative deadly weapon finding in the judgment.  Appellant=s
fourth issue is overruled.

The trial court=s judgment is affirmed.

 

 

                                                                                  


January
13, 2005                                              

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 2

Barajas, C.J., McClure, and Chew, JJ.

 

(Do Not Publish)











[1]
Tercero testified that in this first confrontation it was brother Roy who
started the argument with Appellant, that brother Ernest pulled a knife, and
that they tried to Arush@ Appellant while he was sitting in the
front passenger seat of his car. 
According to Tercero, Ms. Garcia sat on Appellant=s lap to protect him from her brothers
and then they all drove off together. 
Roy Garcia testified that he did not remember what Appellant said that
started the argument, but that he asked Appellant to leave, they all went
outside, and the arguing continued until Appellant and Tercero left.  He stated that no weapons were shown in
this altercation.  He also recalled
Appellant saying that he was going to go get his brother and that his brother
was in Latin Kings.  Brother Ernest
also recalled these statements.  He
also remembered that Appellant displayed a knife in the first incident.  Ernest denied having a knife himself.





[2]
Tercero testified that after Ms. Garcia left, he and friend Shannon Sotelo
drove Appellant home.  





[3]
Sotelo testified that he, Appellant, Appellant=s
brother, Appellant=s sister,
and another girl went back to the house to get Appellant=s
hat and his pager.  Early in the
fight, he was knocked out when he was hit in the head by a bottle.  He remembered that he was dragged back
into the car and that he was bleeding. 
He did not know if anybody else had been hurt.  During cross-examination, Sotelo
admitted that he was an ex-gang member and had been put on probation for a
weapons charge.  Sotelo, Appellant=s sister, Cruz Juarez, and Appellant=s brother, Jose Juarez, all testified
that they did not go over there with the intent to kill someone or to
fight.  Jose and Cruz both testified
to seeing the victim with a kitchen knife in his hand during the fight.  They both denied bringing a baseball bat
with them in the car.  Jose admitted
that he was formerly a member of the Latin Kings gang, but he stated he was no
longer a member at the time of the fight. 






[4]
Appellant stated, Awhen I
went there, the first things . . . I told Ernest was, >I
don=t want no problem.  I just want my hat.= 
Cause I figured, if I would=ve
went back for my hat . . . and I wanted to tell em it was cool . . . I brought
my brother and Shannon along, so . . . that there would . . . that=s why my broth-brother didn=t get out.  That=s
why my brother stayed in the car. 
He said, >We=ll go get your stuff, dude, and then we=ll-we=ll
leave.=@