The STATE of Texas, Appellee,

v.

James LEE, Appellant.

No. 870–90.

Court of Criminal Appeals of Texas,
En Banc.

Oct. 2, 1991.

Rehearing Denied Nov. 20, 1991.

Allan K. Butcher, Fort Worth, for appellant.

Tim Curry, Dist. Atty., C. Chris Marshall, Asst. Dist. Atty., Fort Worth, and Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

OVERSTREET, Judge.

Appellant was charged by indictment for the offense of murder alleged to have been committed on April 25, 1986. On June 2, 1988 in the Criminal District Court Number Two of Tarrant County, Texas, a jury found appellant guilty of the lesser included offense of voluntary manslaughter and sentenced him to ten years confinement in the Texas Department of Corrections.[1] The Second Court of Appeals in Forth Worth reversed the conviction due to insufficiency of evidence of voluntary manslaughter and ordered entry of a judgment of acquittal. *Lee v. State,* 792 S.W.2d 590 (Tex.App.—Fort Worth 1990). We granted the State's two grounds for review challenging that decision. These grounds were as follows:

Number One: Whether appellant's acquiescence in the submission of voluntary manslaughter to the jury estopped him from urging that there was insufficient evidence of sudden passion arising from an adequate cause.

Number Two: Whether voluntary manslaughter is a lesser included offense of murder by virtue of subdivision (3) of Article 37.09, Tex.Code Crim.Proc.Ann. (Vernon 1981), thus requiring rejection of appellant's sufficiency attack since proof of the greater offense is by itself enough

---

1. That institution is now known as the Texas Department of Criminal Justice—Institutional Division.

to sustain conviction for any lesser included offense.

## I.

### SUMMARY OF PERTINENT FACTS

Though the testimony at trial presented conflicting versions of precise events, it indisputably indicated that on April 25, 1986 appellant shot and killed his own son. Apparently, the only surviving witnesses to the shooting were the appellant and the decedent's wife, although both testified that a third person, who did not testify, was at the scene immediately thereafter.[2]

Appellant testified that he arrived at his home during the wee hours of the morning and walked to his front door and observed that it was partially open. Though his son and daughter-in-law stayed with him there on occasion, since he did not see their car he concluded that a burglar/prowler might be inside. After returning to his car and honking the horn and then walking to the side of the house, appellant heard a noise inside, apparently like a "spoon or something" falling off a table. He then returned to his car and removed his pistol from the trunk. Appellant testified that he next proceeded to the back of the house and that as he got there the screen flew open all of a sudden whereupon he fired multiple shots at a silhouette/shadow coming out the door.[3] Appellant stated that he did not know that it was his son, but rather thought it was "a burglar or something." He further testified that he then saw his son's car just drive up around front with his son's wife and another man inside. He testified that he left the scene and called the police and only later found out that it was his son that he had shot.[4] Appellant insisted that he did not know that it was his son coming out the door and that had he known such he would not have shot him.

Appellant's daughter-in-law testified to a drastically different version of events. The decedent's wife stated that she and her husband were asleep in appellant's house but were awakened by appellant seeking entry to "get by to use the restroom."[5] She was of the opinion that appellant was drunk. Her testimony continued that after appellant used the restroom, he and his son exchanged angry words which included threats to call the police and the landlord. When the men went outside and started arguing, she stated that she got up and tried to find some clothes to put on. At about that time, she claimed to have heard the decedent speak out urging appellant not to shoot him and then the first gunshot. She further testified that after that shot, her husband called out directing her to run, which she did, but was chased down and threatened with a gun by appellant. She stated that the aforementioned third party, who apparently also lived at appellant's house, interceded on her behalf and prevented injury.[6]

The record reflects that after both sides concluded evidence presentation and closed, the trial court recessed the jury because it was "[his] responsibility to prepare ... a written charge." The statement of facts reflects that after said recess and prior to the jury returning to the courtroom, the following conversation transpired:

THE COURT: All right. Have both sides received a copy of the charge?

PROSECUTOR: State has its charge.

THE COURT: Any objection?

PROSECUTOR: No, Your Honor.

THE COURT: Has the Defense received a copy of the charge?

APPELLANT'S ATTORNEY: Yes, Your Honor.

THE COURT: Does the Defense have any objection?

---

**2.** Interestingly, the decedent's wife testified that they had married just two days before the fatal shooting.

**3.** He specifically testified that he shot "three or four times or two or three times."       .

**4.** In fact, he testified that after calling the police from a nearby phone, he went to his daughter-

in-law's mother's house to see if his son was there. He said that only then did he find out that it was his son whom he had shot.

**5.** Apparently, the decedent and his wife were sleeping on a hallway floor.

**6.** She failed to specify how much, if any, of the events this third party witnessed.

APPELLANT'S ATTORNEY: No, Your Honor. For the record, I'd like to point out I have submitted specially requested charges in writing to the Court that have been filed and that the charges presented appears to give me each of the specially requested charges that I did ask for.

THE COURT: All right. The requested charge has been filed among the papers in this case; is that correct?

APPELLANT'S ATTORNEY: Yes, sir.

THE COURT: All right. Is there any other matter before the Jury is brought in?

APPELLANT'S ATTORNEY: No, Your Honor.

THE COURT: Please bring in the jury.

Our review of the record does indeed reveal appellant's six file marked specially requested jury charge instructions. A comparison with the charge actually submitted to the jury indicates that appellant did receive all of the instructions which he requested, though not verbatim.[7]

## II.

### MAY PARTY REQUESTING JURY CHARGE BE ALLOWED TO SUBSEQUENTLY CLAIM INSUFFICIENT EVIDENCE TO SUPPORT THE GRANTED CHARGE?

■ Appellant claimed on direct appeal that there was insufficient evidence (or more specifically no evidence at all) of guilt of voluntary manslaughter.[8] The court of appeals agreed and held that there was no evidence which would tend to support a finding of sudden passion and reversed the conviction ordering remand and acquittal. *Lee v. State*, 792 S.W.2d 590, 593 (Tex. App.—Fort Worth 1990). The State's two grounds for review each question that holding. Ground number one questions "[w]hether [a]ppellant's acquiescence in the submission of voluntary manslaughter to the jury estopped him from urging that there was insufficient evidence of sudden passion arising from an adequate cause." The State relies heavily upon our opinion in *Bradley v. State*, 688 S.W.2d 847 (Tex.Cr. App.1985).

*Bradley* involved a defendant indicted and tried for murder but convicted by the jury of the lesser included offense of voluntary manslaughter. We reversed that conviction and remanded with instructions to enter a judgment of acquittal because there was insufficient evidence to sustain the conviction due to lack of evidence of the sudden passion element. We noted that that decision hinged upon the fact that that defendant had "vociferously objected to the inclusion of the voluntary manslaughter charge." *Id.* at 853. We also added that failure to object to the charge on the ground that the evidence does not support it would signal acquiescence on the part of the accused who would then be estopped from complaining on appeal that

7. We do note that there does appear to be discrepancies between the specially requested instructions and those actually submitted regarding the application paragraphs of the lesser included offenses of involuntary manslaughter and negligent homicide, as well as in the self-defense and defense of property instructions. Specifically, those portions of the jury charge read "... did then and there intentionally with the intent to cause serious bodily injury to [the decedent], did recklessly cause the death of [the decedent], then you will find the defendant guilty of involuntary manslaughter," and "... did intentionally and with intent cause serious bodily injury to [the decedent], commit an act clearly dangerous to human life, namely, shooting [the decedent], with a firearm, which caused the death of [the decedent], then you will find the defendant guilty of criminally negligent homicide." Likewise in applying the self-defense and defense of property instructions, the charge submitted tracked the "did intentionally and with intent cause serious bodily injury to [the decedent], commit an act clearly dangerous to human life, namely, shooting [the decedent], with a firearm, which caused the death of [the decedent]" language from the second paragraph of the indictment. That paragraph's theory of murder alleging intentionally, with the intent to cause serious bodily injury, committing an act clearly dangerous to human life, namely shooting with a firearm, was the only one submitted to the jury. Since neither appellant nor the State has alleged any error in these instructions as submitted, and whether such was error is not dispositive of the issues on appeal, we express no opinion regarding the propriety of the language in the above noted instructions.

8. Appellant also raised a point claiming error in the admission of hearsay evidence. The court of appeals considered, discussed, and overruled that point. *See Lee v. State*, 792 S.W.2d 590 (Tex.App.—Fort Worth 1990).

the evidence failed to establish all the elements of the lesser included offense. *Id.* The court of appeals cited this language but concluded that it could not "believe that the Court of Criminal Appeals ever intended for an accused to be convicted of voluntary manslaughter by estoppel." *Lee v. State*, 792 S.W.2d at 593.

Although appellant concedes that he acquiesced and did not object to the trial court's inclusion of the voluntary manslaughter instruction, he insists that he did not request such an instruction and that the record is devoid of any indication that his requested special charges were brought to the attention of and/or ruled upon by the trial court. We find that the record belies this contention. As stated previously, the record does contain six file marked instruments requesting jury instructions, including one entitled "Defendant's Special Requested *Charge to the Jury* 1" (emphasis in original), which instructed and applied the law regarding voluntary manslaughter as a lesser included offense of the indicted murder allegation. Also as noted previously, appellant's attorney at trial explicitly stated for the record that he had submitted specially requested charges in writing that had been filed and that the jury charge appeared to include each of his specially requested charges. Obviously, he was referring to those very file marked instruments mentioned above whose captions each included the term "Requested." We hold that appellant not only acquiesced to the trial court's inclusion of lesser included offense voluntary manslaughter instructions but also requested that such be included. Therefore, appellant's situation is contrary to that of Bradley, who had vehemently objected to the inclusion of such instructions in his jury charge.

We observe that the court of appeals in its opinion below expressed its view that some of our language regarding estoppel in *Bradley* was dicta. *Lee v. State*, 792 S.W.2d at 593. Today we confirm that language and hold that by invoking the benefit of the lesser included offense charge at trial in not objecting to its sub-mission to the jury, and in fact by requesting that such instructions be included, appellant is estopped from then complaining on appeal that the evidence failed to establish all the elements of that lesser offense. Accordingly, we sustain the State's ground number one and reverse the judgment of the court of appeals and reinstate the conviction and sentence of the trial court.[9]

## III.

## IS VOLUNTARY MANSLAUGHTER ALWAYS A LESSER INCLUDED OFFENSE OF MURDER?

■ We also granted discretionary review on the State's second ground which questioned whether voluntary manslaughter is always a lesser included offense of murder by virtue of TEX.CODE CRIM. PROC.ANN. art. 37.09(3) (Vernon 1981). The State avers that since subdivision (3) states that an offense is a lesser included offense if it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission, the sudden passion negation element creates a culpable mental state peculiar to the crime of homicide; i.e., intent or knowledge influenced by sudden passion, which is a mental state less culpable than pure intent or knowledge. When viewed in that respect, the State alleges that the only difference between murder and voluntary manslaughter is that less culpable mental state (i.e., intent or knowledge accompanied by sudden passion) which suffices to establish the commission of voluntary manslaughter. In effect, the State claims that evidence which is sufficient to support a murder conviction is automatically sufficient to sustain a conviction for voluntary manslaughter even if there is absolutely no evidence of sudden passion arising from an adequate cause irrespective of whether or not the accused acquiesced to or requested the manslaughter submission to the jury.

The State makes a most interesting and somewhat compelling argument, even citing footnoted language from our recent

---

9. We again note that the court of appeals considered, discussed, and decided adversely to ap-pellant his only other point of error presented below.

opinion in *Johnson v. State*, 815 S.W.2d 707 (Tex.Cr.App.1991). Decisions from the Supreme Courts of Illinois and Georgia are also cited.[10] TEX.PENAL CODE ANN. § 6.02 (Vernon 1974) specifies and classifies the criminal culpable mental states in Texas. Intent or knowledge influenced by sudden passion is not included amongst the culpable mental states in § 6.02. Until the Texas Legislature includes such, we cannot conclude that intent or knowledge accompanied by sudden passion exists as a mental state of a lesser degree of culpability than intentional or knowing. We therefore adhere to our prior holdings that unless there is some evidence of sudden passion in the case, voluntary manslaughter cannot be considered a lesser included offense of murder. *Acosta v. State*, 742 S.W.2d 287, 288 (Tex.Cr.App.1986); *Bradley*, 688 S.W.2d at 851. Accordingly, we overrule the State's ground for review number two.

Based upon our holding regarding ground number one, the judgment of the court of appeals is reversed and the judgment and sentence of the trial court is reinstated.

McCORMICK, P.J., and CAMPBELL, WHITE and BENAVIDES, JJ., concur in result.

BAIRD, J., dissents.

MILLER, J., concurs.

Adhering to my view in *Daniel v. State*, 668 S.W.2d 390 (Tex.Cr.App.1984) (Miller, J., concurring) and *Bradley v. State*, 688 S.W.2d 847 (Tex.Cr.App.1985), I concur in the result.

---

**10.** We do observe that these foreign opinions from sister States do not appear to declare that their versions of voluntary manslaughter must *always* be a lesser included offense of murder.