Opinion issued February 10, 2005












In The
Court of Appeals
For The
First District of Texas




NOS. 01-03-00565-CR
           01-03-00734-CR
           01-03-00735-CR
____________

STEVE CHARLES MCKINNEY, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 268th District Court
Fort Bend County, Texas
Trial Court Cause No. 36,294A (Counts I, II, and III)




O P I N I O N
          On a three-count indictment, a jury convicted appellant, Steve Charles
McKinney, of the murder of Guillermo Arvizu; of the capital murder of Danielle
Fleischmann Arvizu, Guillermo’s pregnant wife; and of the capital murder of Hayley
Arvizu, the couple’s five-year-old daughter. The jury assessed appellant’s
punishment at life in prison for the murder of Guillermo. The State sought the death
penalty for the capital murders of Danielle and Hayley; however, because the jury
found that sufficient mitigating circumstances warranted life imprisonment for the
two capital murders, the trial court sentenced appellant to life in prison for both
offenses. We consider (1) whether appellant is estopped, by requesting a lesser-included-offense instruction on which the jury convicted him, from asserting that the
evidence is legally and factually sufficient to support his murder conviction and, if
not, whether the evidence is sufficient; (2) whether the evidence is legally and
factually sufficient to support appellant’s capital-murder convictions as a party to the
offenses; (3) whether the trial court reversibly erred in instructing the jury in the
abstract on causation in a manner that omitted concurrent-causation language; and (4)
whether allegedly inconsistent verdicts for the murder of Guillermo and for the
capital murder of Danielle require reversal. We affirm.
Background
          On the afternoon of October 1, 2001, appellant and his friend, Latasha
Simmons, met with Christopher Torres, an acquaintance of appellant. Torres asked
appellant to drive him to the home of Guillermo, a drug dealer who “moved 10 kilos
a week” and who had “a lot of money, a lot of guns, [and] a big-screen TV.” 
Appellant dropped off Torres, whom he knew had a gun with him, at the corner of the
Arvizus’ street, and appellant and Latasha went to get some food. About 20 minutes
later, appellant and Latasha parked in the Arvizus’ driveway. Appellant brought a
shotgun and some shells as he exited the truck. After his shotgun had discharged
once into the ground outside the door, appellant reloaded and shot Guillermo in the
chest through the front door; Guillermo eventually died of this wound. Appellant
joined Torres in the home, where Torres threatened Danielle with his gun. As
appellant was leaving the home, Torres shot Danielle and Hayley, killing them. 
Appellant then drove Torres away and helped him to dispose of the gun that had been
used to kill Danielle and Hayley.
Legal- and Factual-Sufficiency Challenges

          In his seventh and eighth issues, appellant argues that the evidence is legally
and factually insufficient with respect to count one of the indictment to show that he
intended to murder Guillermo. In his first through fourth issues, appellant asserts that
the evidence was legally and factually insufficient with respect to counts two and
three of the indictment—the capital murders of Danielle and Hayley—to show (1) his
intent to act as a party to their murders and (2) causation. In his fifth and sixth issues,
appellant argues that the evidence was legally and factually insufficient with respect
to count two of the indictment—the capital murder of Danielle—to show that he acted
alone or as a party to attempted or completed robbery or burglary and to show that
there was a causal nexus between the murder and any aggravating offense. 
A.      Standards of Review
          In reviewing a legal-sufficiency challenge, we view the evidence in the light
most favorable to the verdict to determine whether any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt. King v.
State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000); Johnson v. State, 23 S.W.3d 1,
7 (Tex. Crim. App. 2000). 
          In reviewing a factual-sufficiency challenge, we ask “whether a neutral review
of all the evidence, both for and against the finding, demonstrates that the proof of
guilt is so obviously weak as to undermine confidence in the jury’s determination, or
the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary
proof.” Johnson, 23 S.W.3d at 11. The factual-sufficiency standard “acknowledges
that evidence of guilt can ‘preponderate’ in favor of conviction but still be
insufficient to prove the elements of the crime beyond a reasonable doubt.” Zuniga
v. State, 144 S.W.3d 477, 485 (Tex. Crim. App. 2004). The appellate court should
not substitute its own judgment for that of the fact finder. Jones v. State, 944 S.W.2d
642, 648 (Tex. Crim. App. 1996). The fact finder is entitled to believe all, some, or
none of any witness’s testimony. Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim.
App. 1986).
 
 
B.      Sufficiency of the Evidence
          1.       Sufficiency of the Evidence Supporting Conviction for the Murder
of Guillermo

          In his seventh and eighth issues, appellant argues that the evidence is legally
and factually insufficient with respect to count one of the indictment to show that he
had the requisite mens rea to murder Guillermo. Appellant was originally charged
with the capital murder of Guillermo.
                    a.       Estoppel
          Appellant requested and received a charge on, among other things, the lesser-included offense of murder. The jury convicted appellant of murder. The State
argues that appellant is estopped from challenging the legal and factual sufficiency
of the evidence supporting the elements of this offense. The State relies on a line of
cases from the Court of Criminal Appeals providing that a defendant who invokes the
benefit of a lesser-included offense by either requesting a charge on it or by not
objecting to its submission in the charge is estopped from complaining on appeal that
the evidence is legally insufficient to support a conviction on the lesser offense. See
Bradley v. State, 688 S.W.2d 847, 853 (Tex. Crim. App. 1985) (plurality op. &
dictum), overruled on other grounds by Moore v. State, 969 S.W.2d 4, 10 (Tex. Crim.
App. 1998); State v. Lee, 818 S.W.2d 778, 781 (Tex. Crim. App. 1991) (plurality op.),
disapproved on other grounds by Moore, 969 S.W.2d at 10; see also State v. Yount,
853 S.W.2d 6, 9 (Tex. Crim. App. 1993) (noting that its holding, which was that
defendant who requested lesser-included-offense charge could not attack conviction
for lesser-included offense on limitations grounds, was analogous to estoppel holding
of Lee plurality); id. at 11 n.3 (Baird, J., concurring in result) (noting that concurring
judge’s proposed bright-line rule concerning limitations was analogous to Lee’s
plurality holding). Several courts of appeals have noted or followed this line of
authority or have expanded its application to factual-sufficiency challenges.



          As an intermediate appellate court, we must follow binding precedent of the
Court of Criminal Appeals. See Southwick v. State, 701 S.W.2d 927, 929 (Tex.
App.—Houston [1st Dist.] 1985, no pet.). Were it not for the Yount court’s
reaffirmation of Lee’s estoppel holding, Lee and Bradley would not be binding
precedent. Lee was a plurality opinion that was joined by three judges; five judges
joined the judgment only, and one judge dissented. See Lee, 818 S.W.2d 778. 
Bradley’s earlier statement of the estoppel rule, which the Lee plurality espoused, was
dictum, and Bradley itself was also a plurality opinion. See Bradley, 688 S.W.2d at
853. But, in 1993, the majority in Yount reaffirmed the Lee plurality’s
reasoning—although Yount’s holding concerned only an analogous situation. See
Yount, 853 S.W.2d at 9 (five-judge majority); id. at 11 n.3 (Baird, J., concurring in
result, joined by two judges). Because of these statements in Yount, we conclude that
we are bound by Lee’s estoppel rule in the context of legal-sufficiency challenges. 
See Southwick, 701 S.W.2d at 929.
          Although we follow Lee’s estoppel rule, we nonetheless question its
appropriateness, and we respectfully urge the Court of Criminal Appeals to reconsider
the rule. See Castillo v. State, 7 S.W.3d 253, 262 (Tex. App.—Austin 1999, pet.
ref’d) (in opinion authored by retired Presiding Judge Onion, questioning continued
viability of Lee estoppel rule and declining to apply it to “the peculiar factual
situation” of that case). The rule was originally set out in dictum in a plurality
opinion (Bradley), with little analysis, and was then adopted by another plurality
opinion (Lee). The Bradley court and Lee plurality reasoned that the invocation of
the benefit of a lesser-included-offense charge is what estops the defendant from his
appellate challenge. See Lee, 818 S.W.2d at 781; Bradley, 688 S.W.2d at 853. The
Bradley plurality further noted that failure to object to the court’s submission of such
a charge “would signal acquiescence . . . in the trial court’s judgment that” the lesser-included offense was raised by the evidence. Bradley, 688 S.W.2d at 853. The Yount
court reiterated Lee’s and Bradley’s reasoning. See Yount, 853 S.W.2d at 9. 
However, in Yount, the State could not, over a timely objection, have charged the
appellant with the particular lesser-included offense because limitations had expired. 
 See id. at 7. Accordingly, when the appellant affirmatively requested a charge on
that lesser-included offense, he made a strategic choice to forego an absolute (albeit
waivable) bar to prosecution for that offense in exchange for the benefit of the chance
at a less serious conviction. 
          The situation in Yount is not like the situation here. More importantly, the
result articulated in Bradley, Lee, and Yount (estoppel) does not necessarily flow from
the action (the typical request for a lesser-included-offense instruction or the failure
to object to the submission of one). Estoppel has been defined as “[a] bar that
prevents one from asserting a claim or right that contradicts what one has said or done
before or has been legally established as true.” Black’s Law Dictionary 570 (7th
ed. 1999). Similarly, the law of invited error, which is a species of estoppel, “estops
a party from making an appellate error of an action it induced.” Prystash v. State, 3
S.W.3d 522, 531 (Tex. Crim. App. 1999). 
          To be entitled to a charge on a lesser-included offense, there must be, among
other things, some evidence that would permit a jury rationally to find that, if the
defendant is guilty, he is guilty only of the lesser offense. Rousseau v. State, 855
S.W.2d 666, 672-73 (Tex. Crim. App. 1993); Royster v. State, 622 S.W.2d 442, 446
(Tex. Crim. App. 1981). The credibility of the evidence raising a lesser-included
offense and whether that evidence is controverted or conflicts with other evidence
may not be considered in determining whether to instruct the jury on a lesser-included
offense. Moore v. State, 574 S.W.2d 122, 124 (Tex. Crim. App. 1978). It is the
jury’s duty to weigh the evidence and to determine whether the credible evidence
supports the offense charged, the lesser-included offense, or neither. Id. On the other
hand, to determine whether trial evidence is legally sufficient, we view it in the light
most favorable to the verdict to determine whether any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt. King,
29 S.W.3d at 562; Johnson, 23 S.W.3d at 7. 
          Given these legal standards, if a defendant admits to anything by requesting a
lesser-included-offense charge, it is only that there is some evidence that merits
allowing the jury to decide if he is guilty of that lesser offense. He does not admit,
however, that the evidence proves the lesser offense beyond a reasonable doubt; that
is why the matter still goes to the jury, and it is that determination (that the evidence
supports the conviction beyond a reasonable doubt) that is reviewed in a legal-sufficiency challenge. For this reason, a defendant’s invoking the benefit of a lesser-included-offense charge generally should not justify the forfeiture of a legal-sufficiency challenge on appeal.



          Furthermore, to hold that a defendant is estopped from asserting a legal-sufficiency challenge on appeal if he does not object when the State requests a lesser-included-offense charge is even harder to justify. In that situation, the defendant does
nothing affirmatively to procure the lesser charge. This is not invited error; if it is
anything, it is waiver. But our law does not require a criminal defendant to preserve
a legal-sufficiency challenge. Under the Lee estoppel rule, however—and contrary
to the rule in any other context—a criminal defendant must in effect preserve a legal-sufficiency challenge by objecting when the State seeks a lesser-included-offense
instruction; if he does not, he is estopped from raising the challenge on appeal, which
has the same effect for him as a waiver.
          We also conclude that a defendant is not estopped from challenging the factual
sufficiency of the evidence supporting a lesser-included offense on which he
requested a jury charge.


 Whatever a defendant admits to by requesting a lesser-included-offense charge, it is at most that some evidence exists to get the lesser
offense before the jury for determination. See Rousseau, 855 S.W.2d at 672-73;
Royster, 622 S.W.2d at 446. That is, a request for a lesser-included-offense charge
admits that some evidence exists, but it does not admit to the quantity or quality of
that evidence. In a factual-sufficiency challenge, in contrast, the reviewing court
looks at all of the evidence neutrally and determines whether the “proof of guilt is so
obviously weak as to undermine confidence in the jury’s determination, or the proof
of guilt, although adequate if taken alone, is greatly outweighed by contrary proof.” 
Johnson, 23 S.W.3d at 11. This standard thus considers the quality and quantity of
the evidence, while a request for a lesser-included-offense charge does not admit to
evidentiary quality and quantity. Accordingly, we disagree with the courts of appeals
that have applied the Lee estoppel rule to bar factual-sufficiency challenges.
          Because we are bound by Court of Criminal Appeals precedent, we hold that
appellant is estopped from challenging the legal sufficiency of the evidence showing
the elements of the lesser-included offense for which he was convicted.


 However,
we further hold that appellant is not estopped from challenging the factual sufficiency
of the evidence. We respectfully urge the Court of Criminal Appeals to revisit the
sufficiency-estoppel rule announced in Bradley, Lee, and Yount and to clarify that that
rule does not bar a factual-sufficiency challenge.
                    b.       Factual sufficiency
          We first consider the evidence that supports the jury’s verdict. See Johnson,
23 S.W.3d at 11 (in factual-sufficiency review, requiring review of “all the evidence,
both for and against” the jury’s finding). Appellant agreed to take Torres to the
Arvizu residence. Torres told appellant beforehand that Guillermo was a gang
member and drug dealer who had a lot of guns and money and a big-screen television. 
Appellant admitted that Torres “gave [appellant] the impression that [Guillermo]
owed [Torres] something.” Appellant also admitted bringing his shotgun along at
Torres’s request, and he knew that Torres was taking his own gun into the Arvizus’
home. Appellant, whom Guillermo did not know, dropped off Torres, whom
Guillermo and his family did know, at the corner of the Arvizus’ street, out of sight
of their home; a rational jury could have inferred that appellant did so in order to be
Torres’s hidden back-up, in case Torres did not get what he wanted beforehand, rather
than for the reasons that appellant gave in his statement to the police.


 When
appellant eventually went to the Arvizu residence after having dropped Torres off, he
took his shotgun with him. Because two spent shotgun shells were found at the crime
scene, because appellant admitted to having fired two shots, and because a witness
heard two shots, appellant must have taken at least two shells with him—from which
the jury rationally could have inferred an intent to shoot repeatedly. Appellant’s
shotgun first discharged into the mat outside the front door, which the jury could have
believed was unintentional; however, appellant then reloaded the shotgun and
proceeded to shoot Guillermo through the front door.


 Although a bamboo shade
hung over the front-door glass, appellant admitted that he heard Guillermo saying
identifiable things from inside the house, from which the jury could have inferred that
appellant believed that Guillermo was near the door. Although appellant claimed that
the shotgun accidentally misfired the second time, appellant did not run away or
behave in a surprised manner after having shot Guillermo; rather, he reached in
through the door’s broken glass, opened the door, entered the home, and then went
as far back as the bathroom at the end of the back hallway.



          We next consider the evidence that appellant claims supports his factual-sufficiency challenge: the shotgun was inherently unsafe, appellant’s expert opined
that the shotgun could have fired accidentally twice, appellant also injured his co-defendant with the second shotgun blast, the front door was closed, the door’s glass
was covered by a bamboo blind, the shooting occurred in the daytime, appellant’s
approach to the home was conspicuous, appellant did not speed away from the crime
scene, Guillermo uttered a name sounding like Torres’s nickname to officers as he
was dying, Guillermo was a drug dealer and gang member, and Torres told appellant
to return to the Arvizus’ home if Torres did not come out within 15 minutes because
there could be trouble in that case.
          Both parties’ experts testified that appellant’s sawed-off shotgun was an
inherently unsafe firearm—due to its age, its trigger and trigger guard’s having been
wrapped in duct tape, its being sawed-off, its safety mechanism’s not functioning, and
its trigger’s requiring less than normal pressure to discharge. Both parties’ experts
also testified that, because of the duct tape, the trigger would stick back for several
seconds after being pulled. Appellant’s expert, Ronald Singer, testified that those
conditions could cause the shotgun to fire inadvertently “in a number of ways,” and
he recreated that kind of inadvertent discharge in tests. Singer also testified that the
ejector mechanism stuck when he tested the shotgun, which, along with the other
factors, led to the shotgun’s inadvertent firing. Additionally, Sergeant S. Chappell
testified that “what [he] found at the scene” was equally consistent with the shotgun’s
having been fired either intentionally and inadvertently. 
          However, Sergeant Chappell also testified that, in his opinion, the shotgun did
not fire inadvertently. Additionally, and contrary to Singer’s testimony, Michael
Lyons, the State’s expert, testified that the shotgun’s ejector mechanism never
malfunctioned for him when he tested it. Lyons also testified that he could not
reproduce the conditions that might lead to an inadvertent firing of appellant’s
shotgun. The jury was entitled to believe the State’s expert over appellant’s and to
conclude that the shotgun did not accidentally discharge. See Sharp, 707 S.W.2d at
614. 
          Appellant also notes that a witness saw appellant drive slowly to the house
before the shooting began, loud music was playing in the truck, the sound of its
exhaust system was noticeable, and it was broad daylight at the time. From this
evidence, appellant concludes that he obviously did not intend to commit any crime
if he drew attention to himself beforehand. However, the same witness noted that
appellant also left the crime scene “slowly, casually, [and] regularly,” despite his
shotgun’s just having discharged loudly outside twice; a rational jury could thus have
attached little significance to appellant’s having approached the house slowly and
conspicuously. The jury also rationally could have considered that appellant’s
driving slowly and “casually” after the murders undermined his claim that he had
accidentally shot Guillermo: the jury might have considered the calm departure
inconsistent with surprise. Additionally, a witness described appellant’s slow drive
to the home as appearing like appellant was “looking for something,” and the jury
rationally could thus have interpreted appellant’s slow approach as checking out the
scene before committing the crime.
          As for Guillermo’s uttering something sounding like Torres’s nickname, we
note that it was undisputed that appellant, rather than Torres, shot Guillermo. The
jury could also have concluded that it was not surprising that Guillermo uttered only
the name of the attacker whom he knew. Accordingly, we cannot agree with
appellant’s claim that the evidence was factually insufficient to support the verdict
because the uttering of Torres’s name allegedly “reveal[ed] Torres’s intent to murder
Guillermo” and “militat[ed] away from appellant’s intent to murder Guillermo.” 
(Emphasis in original.) Additionally, given the circumstantial evidence of appellant’s
intent to kill set out above, the jury could simply have disbelieved appellant’s claims
in his statement that he returned to the Arvizus’ home with a shotgun solely because
Torres had told him that there could be trouble from drug-dealer Guillermo and that
his shotgun had misfired both times. See Sharp, 707 S.W.2d at 614. Finally, as for
evidence indicating that appellant could not see Guillermo through the door, there
was also evidence indicating that appellant heard Guillermo through it.
          Accordingly, we hold that the proof of appellant’s guilt “is [not] so obviously
weak as to undermine confidence in the jury’s determination,” nor is it “greatly
outweighed by contrary proof.” See Johnson, 23 S.W.3d at 11; see also Zuniga, 144
S.W.3d at 485. 
          We overrule appellant’s seventh and eighth issues.
          2.       Sufficiency of the Evidence Supporting Conviction for the Capital
Murders of Danielle and Hayley: Party Liability and Causation

          In his first through fourth issues, appellant asserts that the evidence was legally
and factually insufficient to show his intent to act as a party to Danielle’s and
Hayley’s murders and to show causation.


 Specifically, appellant argues that “there
is insufficient evidence that appellant formed the requisite intent to aid, encourage,
promote, or assist Torres in committing the capital murders of Danielle and Hayley.”
                    a.       The law
          Under the law of parties upon which the jury was instructed, a person is
criminally responsible for the conduct of another if, “acting with intent to promote or
assist the commission of the offense, he solicits, encourages, directs, aids, or attempts
to aid the other person to commit the offense.” Tex. Pen. Code Ann. § 7.02(a)(2)
(Vernon 2003). The evidence must show that, at the time of the offense, the parties
were acting together, each contributing some part toward the execution of their
common purpose. Ransom v. State, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994). 
In determining whether a defendant participated in an offense as a party, the
factfinder may examine the events occurring before, during, and after the commission
of the offense and may rely on actions of the defendant that show an understanding
and common design to commit the offense. Id. An accused’s mental state may be
inferred and proven circumstantially from acts, words, and surrounding
circumstances. See Ledesma v. State, 677 S.W.2d 529, 531 (Tex. Crim. App. 1984).
                    b.       Legal sufficiency  
          The evidence detailed above with respect to Guillermo’s murder—viewed in
the most favorable light and taking into account all reasonable, favorable
inferences—also supports the jury’s implicit findings on intent with respect to
Danielle’s and Hayley’s capital murders because that evidence indicated that
appellant encouraged, aided, or attempted to aid Torres in committing the series of
crimes against the Arvizus—from the very start, with Guillermo’s murder, to the very
end, with the murder of the other family members. For example, appellant’s
statement revealed that, while in the home, he saw Torres grab Danielle by the hair,
point his gun to her head, and demand, “Where’s it at?” Although appellant’s
statement claimed that he began leaving the home before Torres shot Danielle and
Hayley, a rational jury could have concluded that appellant simply left Torres to carry
out the pre-planned killings. Additionally, a rational jury could have inferred that
appellant killed Guillermo—the sole adult male in the home—so that Torres could
more easily murder the others, who were a woman about eight months pregnant and
her young child. Furthermore, after hearing the shots that killed Danielle and Hayley,
appellant did not drive away, but instead waited for Torres to exit, which did not
occur “right away.” Finally, when Torres admitted in the truck to having shot
Danielle and Hayley, appellant continued to drive Torres away and helped him to
dispose of the handgun.
          We hold that this evidence is legally sufficient to show that appellant
“encourage[d],. . . aid[ed], or attempt[ed] to aid” Torres specifically in the shootings
of Danielle and her daughter. See Tex. Pen. Code Ann. § 7.02(a)(2). The above
evidence likewise shows that appellant and Torres “were acting together, each
contributing some part towards the execution of their common purpose” of murdering
Danielle and Hayley. See Ransom, 920 S.W.2d at 302. 
          Appellant nonetheless argues that (1) “a rational jury could not have concluded
that appellant shot Guillermo so that Torres could more easily murder Danielle and
Hayley with the handgun”; (2) his reloading his shotgun “was not enough to support
the intent element [with regard to Danielle and Hayley] because he did not shoot
either Danielle or Hayley”; (3) the evidence could not be legally sufficient because
“appellant left the home before Torres shot” Danielle and Hayley; and (4) nothing
showed that appellant “knew anything about Torres’s plan to murder Danielle and
Hayley.” (Emphasis in original.) However, as we have discussed above, the jury
rationally could have concluded that appellant and Torres both planned to kill the
home’s residents and that appellant ended up killing Guillermo, while Torres ended
up killing the others.


 Moreover, appellant’s driving Torres to and from the scene,
bringing a shotgun along, taking more than one shotgun shell with him to the home,
helping Torres to dispose of one of the murder weapons, and shooting the only adult
male in the home before Torres shot pregnant Danielle and young Hayley all support
the jury’s implicit finding that appellant, “acting with intent to promote or assist the
commission of” Danielle’s and Hayley’s murders, “encourage[d], . . . aid[ed], or
attempt[ed] to aid” Torres in carrying out the murders. See Tex. Pen. Code Ann. §
7.02(a)(2). In implicitly reaching this conclusion, the jury did not, contrary to
appellant’s accusation, impermissibly stack inference upon inference. Compare
Richardson v. State, 834 S.W.2d 535, 537 (Tex. App.—Houston [1st Dist.] 1992, pet.
ref’d) (op. on reh’g).
                    c.       Factual sufficiency
          Appellant relies on the following matters to show that the evidence is factually
insufficient: (1) the shotgun was inherently unsafe; (2) appellant’s firearms expert
opined that the shotgun could have discharged inadvertently each time that it was
fired; (3) the shooting occurred in the daytime; (4) appellant approached and left the
Arvizus’ home in a conspicuous manner or slowly; (5) the door through which
appellant shot Guillermo was closed; (6) a bamboo blind hung over the door’s
window; (7) appellant did not know the Arvizus, but Torres did; (8) Guillermo told
officers as he was dying that someone with a name like Torres’s nickname had shot
him; (9) appellant’s statement recounted that Torres wanted to return to the home
after the murders to kill the remaining child; (10) nothing of value was taken from the
home; and (11) appellant’s statement recounts that, when Danielle begged appellant
not to kill her husband, appellant told her that he would not. 
          We have already held that the majority of the evidence upon which appellant
relies does not make the jury’s determination of intent to kill factually insufficient.
In addition, even if appellant’s shotgun discharged inadvertently, that would not, as
a matter of law, preclude a finding of party liability. Appellant could still have
intended being a party to the murders—as evidenced by his knowing that Guillermo
had money and drugs, his driving with Torres to and from the crime scene, his
bringing a shotgun to the home and knowing that Torres had already brought a gun
into the home, his not acting shocked after any of the shootings, his waiting for
Torres while Torres was shooting Danielle and Hayley, and his helping Torres to
dispose of his murder weapon—even if Guillermo was killed by the shotgun’s
inadvertent firing. 
          We also note that the jury rationally could have considered appellant’s calm
departure after the murders inconsistent with his claimed surprise that Torres planned
to shoot the wife and daughter. Additionally, given the evidence supporting the
jury’s verdict, the jury could simply have disbelieved the cited portions of appellant’s
statement. See Sharp, 707 S.W.2d at 614. Furthermore, the fact that nothing was
taken from the home does not necessarily undermine the verdict: appellant and Torres
still could have intended to kill the family even if they did not succeed in taking
anything from the home; additionally, the jury reasonably could have concluded that
Torres’s shouting “Where is it?” at Danielle indicated that the object of the robbery
or burglary had not been located. 
          Finally, appellant argues that, because Torres could have easily killed
Guillermo without appellant’s assistance, a rational jury could not find appellant
liable for Danielle’s and Hayley’s deaths. However, it was undisputed that appellant
did shoot Guillermo. Furthermore, just because Torres might have been able to
commit the murders on his own does not mean that the jury could not rationally have
concluded that they planned to commit the murders in a joint effort.
          Accordingly, we hold that the proof of appellant’s guilt as a party “is [not] so
obviously weak as to undermine confidence in the jury’s determination,” nor is it
“greatly outweighed by contrary proof.” See Johnson, 23 S.W.3d at 11; see also
Zuniga, 144 S.W.3d at 485. 
          We overrule appellant’s first through fourth issues.
          3.       Sufficiency of the Evidence Supporting Conviction for the Capital
Murder of Danielle: Aggravating Offenses

          In his fifth and sixth issues, appellant argues that the evidence was legally and
factually insufficient with respect to count two of the indictment—the capital murder
of Danielle—to show that he acted alone or as a party to attempted or completed
robbery or burglary, the underlying offenses to capital murder on which the jury was
charged, and to show that there was a causal nexus between the murder and any
aggravating offense.
                    a.       The law
          The following definitions conform to the charge given regarding count two of
the indictment. A person commits murder if he intentionally or knowingly causes the
death of an individual. Tex. Pen. Code Ann. § 19.02(b)(1) (Vernon 2003). A person
commits capital murder if he intentionally commits the afore-defined murder in the
course of committing or attempting to commit burglary of a habitation or robbery.


 
Id. § 19.03(a)(2) (Vernon 2003).
 
          A person commits robbery if, in the course of committing theft and with the
intent to obtain or to maintain control of the property, he (1) intentionally, knowingly,
or recklessly causes bodily injury to another or (2) intentionally or knowingly
threatens or places another in fear of imminent bodily injury or death. Id. § 29.02(a)
(Vernon 2003). Theft occurs when a person unlawfully appropriates property with
intent to deprive the owner of property. Id. § 31.03(a) (Vernon 2003). As used in the
definition of robbery, the term “in the course of committing theft” means conduct that
occurs in an attempt to commit, during the commission of, or in immediate flight after
the attempt or commission of theft. Id. § 29.01(1) (Vernon 2003).
          A person commits burglary if, without the owner’s effective consent, he enters
a habitation and commits or attempts to commit a felony, a theft, or an assault. Id. §
30.02(a)(3) (Vernon 2003). A person commits an assault if, among other things, he
“intentionally, knowingly, or recklessly causes bodily injury to another, including the
person’s spouse”; “intentionally or knowingly threatens another with imminent bodily
injury, including the person’s spouse”; or “intentionally or knowingly causes physical
contact with another when the person knows or should reasonably believe that the
other will regard the contact as offensive or provocative.” Id. § 22.01(a)(1)-(3)
(Vernon 2003).       
          A person commits criminal attempt if, with specific intent to commit an
offense, he does an act amounting to more than mere preparation that tends, but fails,
to effect the commission of the offense intended. Id. § 15.01(a) (Vernon 2003). 
                    b.       Legal sufficiency
          The following evidence supports the jury’s implicit determination that
appellant attempted to or did commit robbery or burglary. Appellant knew before
driving to the Arvizu home with Torres that Guillermo was a drug dealer who had lots
of money and who moved a significant amount of drugs. He and Torres brought
firearms to the Arvizu home. Appellant shot Guillermo, and Torres shot Hayley and
Danielle—both of which acts the jury could have inferred were intentional, as set out
above. In his statement, appellant stated that he saw Torres grab Danielle by the hair,
point his gun to her head, and demand, “Where’s it at?” Additionally, as set out
above, the jury could rationally have inferred that appellant heard Guillermo behind
the door and intentionally shot at him, after which appellant entered the home and
Torres shot Danielle and Hayley. We hold that this is some evidence, when viewed
in the appropriate light, that appellant acted as a principal or as a party to attempted
burglary or attempted or actual robbery. See Tex. Pen. Code Ann. §§ 7.02(a)(2),
22.01(a)(1)-(2), 29.01(1), 29.02(a), § 31.02(a)(3), § 31.03(a).
                    c.       Factual sufficiency
          Appellant relies on the following evidence in support of his factual-sufficiency
challenge. After the murders, the Arvizu house contained a “lot of valuable items,”
including a big-screen television set, marihuana, and jewelry, which had not been
taken during the crime. Sergeant Chappell testified that there was no evidence that
anything had been taken from the residence. However, capital murder may be
committed by attempted burglary or robbery, and robbery may be committed “in the
course of committing theft,” which is defined as, among other things, conduct
occurring in an attempt to commit theft. See id. §§ 19.03(a)(2), 29.01(1). The fact
that appellant and Torres left valuable items behind does not preclude a finding of
attempted burglary or robbery. Additionally, whatever Torres was looking for was
evidently not yet located, as evidenced by his demanding, “Where’s it at?” The jury
could thus have believed that appellant and Torres came to the Arvizu home looking
for something other than what was readily visible—which could explain why they left
other valuable items behind. Appellant also argues that the fact that he drove through
the Arvizus’ neighborhood in a conspicuous manner during daylight shows that he
lacked intent to commit robbery or burglary. We have already concluded, however,
that the jury reasonably could have placed little weight on this fact and, alternatively,
that this fact does not make the remaining evidence factually insufficient to support
the verdict.
          We overrule appellant’s fifth and sixth issues.
Jury Instruction on Concurrent Causation
          In his ninth issue, appellant argues that the trial court erred in instructing the
jury improperly in the abstract on causation and that, consequently, all three
convictions should be reversed. Specifically, appellant argues both that a concurrent-causation instruction was required on all counts and that, because the trial court gave
an incomplete instruction, the court in effect lessened the State’s burden of proof and
thereby harmed him.
          The Penal Code provides that “[a] person is criminally responsible if the result
would not have occurred but for his conduct, operating either alone or concurrently
with another cause, unless the concurrent cause was clearly sufficient to produce the
result and the conduct of the actor clearly insufficient.” Tex. Pen. Code Ann. §
6.04(a) (Vernon 2003) (emphasis added to show concurrent-causation language). The
jury charge contained a causation instruction omitting the concurrent-causation
language of section 6.04(a); the charge provided that “[a] person is criminally
responsible if the result would not have occurred but for his conduct.” The causation
instruction was not applied to the facts with regard to any of the three counts.
          Appellant did not object to this instruction until his motion for new trial, which
was too late. See Tex. Code Crim. Proc. Ann. art. 36.19 (Vernon Supp. 2004-2005)
(“All objections to the charge . . . shall be made at the time of the trial.”). Because
appellant did not timely object, we review for egregious harm, provided that the
instruction was erroneous. See Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim.
App. 1984); see also Tex. Code Crim. Proc. Ann. art. 36.19 (Vernon Supp. 2004-2005).
 
          “A concurrent cause is ‘another cause’ in addition to the actor’s conduct, an
‘agency in addition to the actor.’” Robbins v. State, 717 S.W.2d 348, 351 n.2 (Tex.
Crim. App. 1986) (quoting S. Searcy & J. Patterson, Practice Commentary,
Tex. Code Crim. Proc. Ann. § 6.04); Mattox v. State, 874 S.W.2d 929, 933 (Tex.
App.—Houston [1st Dist.] 1994, no pet.) (quoting Robbins). “A jury charge on
causation is called for only when the issue of concurrent causation is presented.” 
Hughes v. State, 897 S.W.2d 285, 297 (Tex. Crim. App. 1994). 
          With respect to count one—the murder of Guillermo—the trial court would
have erred if it had included concurrent-causation language in the instruction. It was
undisputed that appellant alone, as a principal, killed Guillermo. Accordingly, no
other cause could have been “clearly sufficient” to have killed Guillermo, and
appellant’s actions were not “clearly insufficient” to have done so. At least one
commentary has suggested that, when, as here, concurrent causation is not raised, the
proper causation instruction to give is what was actually given: “A person is
criminally responsible if the result would not have occurred but for his conduct.” See
Michael J. McCormick, Thomas D. Blackwell, & Betty Blackwell, texas
Practice series: Criminal Forms & Trial Manual § 100.07 (West 1995). But
see Hughes, 897 S.W.2d at 297 (“A jury charge on causation is called for only when
the issue of concurrent causation is presented.”). However, even if the trial court
erred in submitting this causation instruction with respect to appellant’s actions as a
principal, appellant does not explain how he was harmed, much less egregiously
harmed. Indeed, there was no harm because it was undisputed that appellant alone
shot Guillermo, necessarily making him the “but for”cause of the death, and because
the instruction was not applied to the facts. See Hughes, 897 S.W.2d at 297
(overruling challenge to improperly included abstract causation instruction because
application paragraph did not incorporate concurrent-causation concept and, thus,
“the jury was not authorized to convict on the theory of causation”).
          With respect to counts two and three, it was undisputed that appellant could be
liable solely as a party. When a defendant’s intent and actions meet the criteria for
party liability, he is criminally responsible for the conduct of the principal actor. Tex.
Pen. Code Ann. § 7.02(a)(2); see id. § 7.01(a). Under those circumstances, the
principal actor’s conduct is imputed to the party defendant. See id. Because the
principal’s actions are imputed to the party defendant, the principal’s actions are
those of the party defendant. One’s own actions or state generally cannot be a
concurrent cause of one’s criminal act. See Robbins, 717 S.W.2d at 351 n.2. 
Moreover, because the principal’s actions are imputed to the party defendant, the
defendant’s actions can never be “clearly insufficient” to produce the result, as
required by section 6.04(a). See Tex. Pen. Code Ann. § 6.04(a). Because the party
defendant’s and his principal’s actions cannot satisfy section 6.04(a)’s criteria as a
matter of law, a trial court would err in giving a concurrent-causation instruction
under these circumstances. Accordingly, we hold that a defendant who is liable
solely as a party is not entitled to a concurrent-causation instruction when the alleged
concurrent cause is the act of the principal. See Hanson v. State, 55 S.W.3d 681, 699
(Tex. App.—Austin 2001, pet. ref’d) (rejecting defendant’s assertion that concurrent-causation instruction required when one who is liable as a party claims that
principal’s actions are concurrent cause); see also Pheasant v. State, No. 14-00-00398-CR, 2001 WL 931009, at *5 n.5 (Tex. App.—Houston [14th Dist.] Aug. 16,
2001, no pet.) (not designated for publication) (implying same in dictum).
          Even assuming that the instruction given was somehow error, appellant has not
suffered egregious harm. First, the instruction was appropriate for count one, in
which appellant was undisputedly the principal.


 Second, the instruction was not
applied to the facts concerning counts two or three. See Hughes, 897 S.W.2d at 297. 
Third, when the prosecutor in closing argued that the instruction’s “but for” causation
language applied to counts two and three, appellant objected; subsequently, in his
closing argument, appellant’s counsel clarified that the jury had to find that appellant
was a party under the criteria of section 7.02(a) for appellant to be liable for
Danielle’s and Hayley’s deaths. Accordingly, even assuming that the trial court erred,
no egregious harm resulted.
          We distinguish Robbins v. State, on which appellant relies. See id., 717 S.W.2d
348 (Tex. Crim. App. 1986). In Robbins, an involuntary-manslaughter case that did
not involve party liability, concurrent causation was not an issue and should not have
been submitted to the jury; nonetheless, the trial court gave an erroneous causation
instruction that it applied to the facts. Id. at 351. That instruction allowed conviction
if the defendant’s intoxication caused “or contributed to cause” the collision and
death, without also providing any restriction on the degree of contribution, as
required by section 6.04(a). Id. at 351-52. The court held that the erroneous
instruction improperly lessened the State’s burden of proof. Id. at 352; see Crabb v.
State, 717 S.W.2d 353, 355 (Tex. Crim. App. 1986) (identical holding to that in
Robbins). Robbins stands for the proposition that, if a trial court submits concurrent
causation to the jury by instruction and application, the court had better get it right. 
See id.; see also Hutcheson v. State, 899 S.W.2d 39, 43 (Tex. App.—Amarillo 1995,
pet. ref’d) (so summarizing Robbins’s holding). As in Robbins, concurrent causation
was not an issue raised for any count here; unlike in Robbins, however, the trial court
in this case did not instruct the jury on concurrent causation, the “but for” causation
instruction that the court gave was appropriate for appellant’s actions as a principal,
and that instruction was not applied to the facts with respect to any count. See
Hutcheson, 899 S.W.2d at 42 (holding that trial court not required to apply partial
section-6.04(a) abstract instruction to facts of case when concurrent causation not
raised by evidence). We also reject appellant’s assertion that a party who alleges that
his principal’s actions are a concurrent cause is entitled to a concurrent-causation
instruction. In the majority of cases that we have found in which both party liability
and concurrent causation are discussed, either (1) concurrent causation is considered
only to the extent that the defendant acted as a principal,


 rather than to the extent
that he acted as a party, or (2) concurrent causation is considered only with respect
to third parties’ actions or conditions that are unrelated to the defendant or to the
principal.


 In the few cases in which concurrent causation may have been considered
with respect to the principal’s actions, the courts simply assumed, without expressly
deciding the issue, that a principal’s actions could be a concurrent cause, and they did
not consider whether the party defendant was entitled to a concurrent-causation
instruction under those circumstances.



          We overrule appellant’s ninth issue.
Alleged Inconsistency of Jury Verdicts
          In his tenth issue, appellant argues that his conviction on count two (Danielle’s
killing) should be reversed because it is inconsistent with his conviction for murder
on count one (Guillermo’s killing), when the jury rejected a conviction for capital
murder on count one.
          Appellant’s brief acknowledges that this Court has already rejected this
argument. See Benavides v. State, 992 S.W.2d 511, 519 (Tex. App.—Houston [1st
Dist.] 1999, pet. ref’d); see also U.S. v. Powell, 469 U.S. 57, 64-67, 105 S. Ct. 471,
476-78 (1984); Dunn v. U.S., 284 U.S. 390, 393, 52 S. Ct. 189, 190-91 (1932),
overruled on other grounds by Sealfon v. U.S., 332 U.S. 575, 68 S. Ct. 237 (1948);
Ward v. State, 113 S.W.3d 518, 522-23 (Tex. App.—Houston [1st Dist.] 2003, pet.
ref’d) (noting the rule in Dunn and Powell). Appellant further asserts that he “raises
the issue here only to preserve the argument for review” in the Court of Criminal
Appeals. Assuming without deciding that the verdicts are indeed inconsistent, we
decline to revisit our holding in Benavides. 
          We overrule appellant’s tenth issue.
Supplemental Issue for Review
          In a supplemental issue for review raised for the first time in his reply brief,
and in response to the State’s argument that party liability need not have been alleged
in the indictment to be included in the charge, appellant argues that “[b]ecause the
theory of party liability was not alleged in the indictment, appellant lacked adequate
notice to prepare a defense.” Nothing shows that appellant lacked adequate notice
that the State would seek a parties charge for the capital murders of Danielle and
Hayley: it was undisputed that appellant did not shoot Danielle and Hayley and that
he could thus be convicted only as a party for their murders, and appellant’s counsel
thoroughly defended appellant throughout trial on the basis that only Torres had shot
Danielle and Hayley. Moreover, the law is clear that the indictment need not allege
the theory of party liability as a prerequisite for the trial court’s charging the jury on
the law of parties. See Marable v. State, 85 S.W.3d 287, 287 (Tex. Crim. App. 2002)
(rejecting challenge that “that [the appellant] did not receive adequate notice to
prepare his defense because the State did not allege in the indictment that it would
prove actual delivery by the law of parties.”); accord Swope v. State, 805 S.W.2d 442,
444-45 (Tex. Crim. App. 1991); Crank v. State, 761 S.W.2d 328, 352 (Tex. Crim.
App. 1988), disapproved on other grounds by Alford v. State, 866 S.W.2d 619, 624
n.8 (Tex. Crim. App. 1993); English v. State, 592 S.W.2d 949, 955 (Tex. Crim. App.
1980); Pitts v. State, 569 S.W.2d 898, 900 (Tex. Crim. App. 1978).



          We overrule appellant’s supplemental issue.
Conclusion
          We affirm the judgment of the trial court.
 


                                                                        Tim Taft
                                                                        Justice

Panel consists of Justices Taft, Jennings, and Bland.

Publish. See Tex. R. App. P. 47.2(b).