COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-03-364-CR

 

 

MICHAEL DAVID DUNN                                                        APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

             FROM
THE 16TH DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------








A jury convicted Appellant
Michael David Dunn of criminally negligent homicide and further found that the
automobile that he was driving when he committed the offense was a deadly
weapon.  Appellant elected to be
sentenced by the court, and therein lies the tale.  Appellant brings five points on appeal,
arguing that the trial court erred by failing to suppress the results of his
blood test, that the evidence is both legally and factually insufficient to
support the verdict, and that the trial court erred in resentencing him.  Because we hold that the trial court erred in
resentencing Appellant but also that the evidence is both legally and factually
sufficient and that the blood test results were properly admitted, we modify
the judgment to reflect a sentence of two years= confinement in the Institutional Division of the Texas Department of
Criminal Justice (IDTDCJ) and a $10,000 fine and affirm the judgment as
modified.

Legal
and Factual Sufficiency of the Evidence

Appellant was tried for
intoxication manslaughter and manslaughter. 
In his third and fourth points, Appellant argues that the evidence is
legally and factually insufficient to support the jury=s finding of guilt on the lesser included offense of criminally
negligent homicide.  Appellant requested
the jury instruction on the lesser-included offense of criminally negligent
homicide.  When a defendant requests the
inclusion of a jury instruction on a lesser-included offense, he is estopped
from challenging on appeal both the legal and the factual sufficiency of the
evidence to support his conviction of that lesser-included offense.[1]  We overrule Appellant=s third and fourth points on appeal.








Motion
to Suppress Results of Blood Test

In his first point, Appellant
contends that the trial court erred by denying his motion to suppress the
results of his blood test because his consent was coerced.  The appropriate standard for reviewing a
trial court=s ruling on
a motion to suppress evidence is a bifurcated standard of review, giving almost
total deference to the trial court=s determination of historical facts and reviewing de novo the court=s application of the law to those facts.[2]  If the trial court did not make explicit
findings of historical facts, the appellate court reviews the evidence in the
light most favorable to the trial court=s ruling, making the assumption that the trial court made explicit
findings of fact, supported in the record, that buttressed its conclusion.[3]

In determining whether
consent is valid, the Texas Court of Criminal Appeals has held,








In Schneckloth
v. Bustamonte, the United States Supreme Court considered the definition of
Avoluntary
consent@ in
the context of a search and seizure.  AWhen
the subject of a search is not in custody and the State attempts to justify a
search on the basis of his consent, the Fourth and Fourteenth Amendments
require that it demonstrate that the consent was in fact voluntarily given, and
not the result of duress or coercion, express or implied.@  The Court noted that Avoluntariness@ goes
beyond the literal meaning of Aa knowing choice.@  Unless a person is unconscious or
incapacitated, all statements made could be considered Avoluntary
in the sense of representing a choice of alternatives.@  Under this view, even physically-forced
consent would be voluntary because, in theory, the suspect had a choice--either
consent to the search or be beaten.  On
the other hand, we do not ask whether the consent would have been given Abut‑for@ the
police actions or inquiries.  Under this
view, Avirtually
no statement would be voluntary because very few people give incriminating
statements in the absence of official action of some kind.@  Therefore, the premise of voluntariness does
not mean that police are required to never question an accused in custody, but
they must have limits to the measures taken during their interrogations.

 

AIn
determining whether a defendant's will was overborne in a particular case,@ the Schneckloth
Court developed the standard by which consent is tested for voluntariness.  Trial courts Amust
[assess] the totality of all the surrounding circumstances‑‑both
the characteristics of the accused and the details of the interrogation.@ By
looking at the circumstances leading up to the search, the reaction of the
accused to pressure, and any other factor deemed relevant, a trial court can
determine whether the statement of consent was given voluntarily.  Some relevant factors the Supreme Court has
taken into consideration in past cases are: 
the youth of the accused, the education of the accused, the intelligence
of the accused, the constitutional advice given to the accused, the length of
the detention, the repetitiveness of the questioning, and the use of physical
punishment.

 








The Texas Constitution protects the people
against all unreasonable seizures and searches. 
A search made after voluntary consent is not unreasonable.  In determining whether a defendant's consent
was voluntary, the State is required to prove the voluntariness of consent by
clear and convincing evidence.  This
Court has held that the trial court must look at the totality of the
circumstances surrounding the statement of consent in order to determine whether
that consent was given voluntarily.[4]

 

The trial court as fact finder is the sole judge
of the credibility of the witnesses and the weight to be given their testimony.[5]

The evidence showed the
following.  Appellant was driving his
pickup truck on a two-lane road in Denton County when the pickup crossed over
the line into oncoming traffic and crashed head-on into a car driven by the complainant.  Although the complainant was killed on
impact, Appellant was able to walk and to speak while still at the scene.  He was shaken up, but he did not appear to
witnesses to need medical treatment.  The
officer on the scene did not smell alcohol on Appellant.  The officer asked Appellant if he would
provide a sample of his blood, and Appellant agreed to do so.  He was not informed of his Miranda
rights.[6]  Appellant was then taken to Denton Regional
Medical Center where he provided a blood sample.








The testifying officer stated
that Appellant was not placed under arrest, but he equivocated when asked
whether Appellant was handcuffed. 
Appellant was placed in the back seat of a police car.  The blood tests revealed no alcohol but did
show the presence of amphetamine and methamphetamine in Appellant=s system.  The testifying
officer denied using threats or other tactics to overbear Appellant=s will.  Appellant did not
controvert the officer=s testimony.

Based on the appropriate
standard of review,[7]
we hold that the trial court did not abuse its discretion by denying Appellant=s motion to suppress the blood test results on the basis of invalid
consent because the record supports the trial court=s finding that Appellant voluntarily consented to providing the blood
sample for testing.  We overrule
Appellant=s first
point.








In his second point,
Appellant contends that the trial court erred by denying his motion to suppress
because the blood test results were not relevant.  Under the Texas Rules of Evidence, Arelevant evidence@ is defined as Aevidence
having any tendency to make the existence of any fact that is of consequence to
the determination of the action more probable or less probable than it would be
without the evidence.@[8]  As the State argues, relying
on Stewart v. State, to be relevant, the evidence does not have to prove
or disprove a particular fact by itself; it just has to provide a small nudge
toward proving or disproving a fact of consequence.[9]  The first issue presented to the jury was
whether Appellant was guilty of intoxication manslaughter due to the introduction
of a controlled substance, a drug, a dangerous drug, or a combination of two or
more of those substances into his system. 
Appellant argues that the existence of the controlled substance or drug
was irrelevant because no one specifically tied the presence of the substance
to lack of normal use.  If this is true,
it is a failure of proof; the failure of proof does not render the evidence
irrelevant but insufficient.[10]  The presence of the substance was an element
of the offense as charged and as submitted to the jury.  Consequently, the test results were relevant.  We overrule Appellant=s second point.

Sentencing








In his fifth point, Appellant
argues that the trial court improperly withdrew a lawful two-year sentence and
replaced it with an eight-year sentence. 
We agree.  Criminally negligent
homicide is punished as a state jail felony unless a deadly weapon is used.[11]  If a deadly weapon is used, the offense is
punished as a third-degree felony.[12]  It is difficult to understand how one could
commit a homicide without using an instrument capable of causing death or
serious bodily injury.  Consequently, one
wonders how criminally negligent homicide could ever be punished as a state
jail felony.

Regardless, Appellant was
admonished that he was being tried for a state jail felony.  Although the State provided Appellant notice
of its intent to seek a deadly weapon finding, the deadly weapon allegation was
not contained in the indictment.  The
court submitted the issue to the jury, and the jury returned an affirmative
finding on the deadly weapon issue.  The
record is clear that the trial judge, the prosecutors, the defense lawyer, and
Appellant all believed they were trying a state jail felony case.[13]  They did not realize that Appellant faced the
punishment of a third-degree felony, and he was not admonished on third-degree
felony punishment.








On August 6, after the jury
returned its guilty verdict and the affirmative deadly weapon finding, the
issue of punishment was tried before the trial court.[14]  On that date, the trial court sentenced
Appellant as follows:

THE
COURT:  After deliberating, the jury returned
a verdict finding you guilty of the offense of criminally negligent homicide.

 

It is the judgment of this Court that you are
guilty in Cause No. F-2003-0556-A, State of Texas versus Michael David Dunn,
and that you be punished in accordance with the court=s
verdict.

 

Do you, Mr. Dunn, or your counsel have any legal
reason why sentence should not be pronounced against you?

 

THE
DEFENDANT:  No.

 

THE
COURT:  The defendant, having nothing to
say, it is the order of the court that you, Michael David Dunn, who has been
adjudged to be guilty of the offense of criminally negligent homicide, a
felony, in Cause No. F-2003-0556-A, and whose punishment is being assessed at a
period of two years in prison in the Texas Department of Criminal Justice
and a fine of $10,000 B

 

[PROSECUTOR]:  Your Honor, I believe that would be the state
jail division.

 

THE
COURT:  Excuse me.  State jail division.  Thank you.

C to
the state jail division be delivered to the sheriff of Denton County, Texas, to
serve out the confinement period in the state jail facility for a period of two
years.  You=re
ordered C  you=re remanded to the custody of
the sheriff and C I
did assess the fine as well.








You=re, again, remanded to the
custody of the sheriff of Denton County until he can carry out the directions
and instructions of the sentence.  Your
sentence will commence this day and you will receive credit for any time
periods of detention as provided by law.

 

These proceedings are concluded. 
[Emphasis added]

 

On August 13, one week after
the trial court imposed the two-year sentence, the trial judge ordered the
parties back to court, set aside the two-year sentence, and imposed a sentence
of eight years= confinement
in the IDTDCJ and a $10,000 fine.








In criminal trials, the court
Amay not receive a verdict . . . and enter another and different
judgment from that called for by the [jury] verdict.@[15]  A trial judge is without
authority to enter a judgment notwithstanding the verdict (jnov) in a criminal
case.[16]  Consequently, the trial court was obligated
to enter the jury=s deadly
weapon finding unless the trial court granted a motion for new trial.  Appellant filed no motion for new trial
before the trial court pronounced sentence, and, in a criminal case, only the
defendant is authorized to file such a motion.[17]  A new trial may not be granted at the State=s request,[18]
nor can the trial court grant a new trial sua sponte.[19]  Consequently, although the trial judge failed
to pronounce the affirmative deadly weapon finding, we cannot say that the
judge set aside the deadly weapon finding. 
Appellant=s punishment
therefore had to fall within the range of punishment for a third-degree felony. The range of punishment for a third-degree
felony is imprisonment in the IDTDCJ, a prison,[20]
for not less than two nor more than ten years.[21]  In addition, a fine of up to $10,000 may be
assessed.[22]  A state jail felony is punished by
incarceration in a state jail felony facility, a jail, not a prison, that is
operated by the state jail division.[23]  When the trial judge pronounced sentence of Atwo years in prison in the Texas Department of Criminal Justice and a
fine of $10,000,@ the judge
pronounced a valid sentence.








The State treats the issue as
though the trial court=s first
attempt to sentence Appellant occurred when the trial judge Asentenced@ Appellant
to two years in the state jail division. 
The State, citing Banks v. State,[24]
claims that this is a void sentence because the trial court sentenced Appellant
to confinement in an unauthorized place. 
We note for the sake of clarity that it has long been recognized in
Texas jurisprudence that Awhere the
place of confinement stated in the jury verdict is unauthorized it may be
treated as surplusage, and judgment may be entered by the [c]ourt specifying
the proper place of confinement.@[25]  But more significantly, we
note that the State does not appear to recognize in its brief that the trial
court=s first pronouncement of sentenceCtwo years= confinement
in the IDTDCJCmight be
valid.








In Tooke v. State, our
sister court reversed a trial court's attempt to resentence a defendant after
the trial court initially failed to consider an enhancement charge.[26]  The court orally sentenced the defendant to
imprisonment for Anot less
than 5 years nor more than 50 years.@[27]  After realizing it had
mistakenly overlooked an enhancement paragraph, the court proceeded to
resentence the defendant to a term of Anot less than 15 years nor more
than 50 years.@[28]  The defendant argued on appeal
that the court erred in resentencing him after the sentence had been entered.[29]  Agreeing with the defendant, the Tooke
court explained:

After sentence was first imposed on [the
defendant], the trial court was without power to set aside that sentence and
order a new sentence. Such attempted resentencing was null and void and of no
legal effect. The original sentence was a valid and proper sentence. The
court's failure to consider the enhancement paragraph of the indictment prior
to first sentencing [the defendant] should not enlarge the court's power over
the case.[30]

 

The appellate court modified the sentence to
reflect the original 5 to 50 years' punishment.[31]








Similarly, in Dickerson,
the First Court of Appeals modified a judgment to reflect the original sentence
after a trial court attempted to resentence a defendant with enhancements.[32]  The trial court initially held a punishment
hearing that included evidence on two enhancement allegations and sentenced the
defendant to two years' confinement.[33]  Within a minute after the court pronounced
the sentence, however, the State asked if the trial court had considered and
included the enhancements.[34]  The court then immediately ordered the
defendant to return to the bench, retracted the first sentence, and resentenced
him to twenty-five years=
confinement.[35]  After the defendant complained of the
decision to resentence him, the trial court reinstated the original two‑year
sentence.[36]

The State appealed, claiming
that the twenty-five-year sentence should have been upheld because the court Ahad the authority to correct an error in the assessment of punishment.@[37]  In affirming the trial court's
original sentence, the First Court of Appeals explained,








While
. . . the trial court meant to find the enhancement paragraphs true,
three things occurred before it did so: (1) the court imposed a lawful
punishment; (2) the court pronounced a valid and proper sentence; and (3) [the
defendant] accepted that sentence.  Under
these procedural facts, the trial court was not free to Aretract
the sentence . . . given here@ and Aresentence@ [the
defendant], regardless of the fact that the punishment originally assessed was
the product of mistake or oversight.[38]

 

Accordingly, the appellate
court modified the judgment by deleting the enhancement finding of Atrue@ and
changing the A25 years@ to A2 years.@[39] Both Tooke and Dickerson
stand for the proposition that a court cannot retract a valid sentence
and resentence a defendant to provide for greater punishment.  Judge Cochran has clarified this rule in a
concurring opinion in McClinton v. State.[40]  In reviewing the extent of a trial court's
authority to correct an illegal sentence, Judge Cochran explained that Aa trial court . . . does not have the inherent authority to modify,
alter, or vacate a valid sentence orally imposed solely by means of a
later written judgment or docket entry.@[41]








In the case now before this
court, the trial court imposed a lawful sentence, immediately replaced it with
an unlawful sentence, and then, days later, attempted to replace the unlawful
sentence with an otherwise lawful one that greatly increased the
punishment.  After the trial court
imposed a lawful sentence, the trial court was without authority to change it
because Appellant had not filed a motion for new trial seeking a different
punishment.[42]  We therefore sustain Appellant=s fifth point.

                                           Conclusion

Having sustained Appellant=s fifth point, we modify the trial court=s judgment to reflect that Appellant is sentenced to two years= imprisonment in the IDTDCJ and a fine of $10,000 and affirm the trial
court=s judgment as modified.

 

 

LEE ANN DAUPHINOT

JUSTICE

PANEL B:   DAUPHINOT, HOLMAN, and
GARDNER, JJ.

PUBLISH

DELIVERED: 
October 6, 2005











[1]See
State v. Lee, 818 S.W.2d 778, 781 (Tex. Crim. App. 1991)
(holding that appellant who requests jury instruction on lesser included
offense is estopped from then complaining on appeal that the evidence failed to
establish all the elements of that lesser offense), disapproved on other
grounds, Moore v. State, 969 S.W.2d 4, 10 (Tex. Crim. App. 1998).

 





[2]Carmouche
v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); Guzman
v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).





[3]Carmouche, 10
S.W.3d at 327-28; Guzman, 955 S.W.2d at 89.





[4]Reasor
v. State, 12 S.W.3d 813, 817-18 (Tex. Crim. App. 2000)
(citations omitted).





[5]State
v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).





[6]Miranda
v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966).

 





[7]See Carmouche,
10 S.W.3d at 327-28; Guzman, 955 S.W.2d at 89.





[8]Tex. R. Evid. 401.





[9]Stewart
v. State, 129 S.W.3d 93, 96 (Tex. Crim. App. 2004).





[10]See Jackson
v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Ross v.
State, 133 S.W.3d 618, 620 (Tex. Crim. App. 2004).





[11]See Tex. Penal Code Ann. ''
12.35(c)(1), 19.05 (Vernon 2003).





[12]See
id. '
12.35(c)(1).





[13]See Tex. Penal Code Ann. ''
12.35(c)(1) (providing that individual adjudged guilty of a state jail felony
shall be punished for a third-degree felony if it is shown on the trial of the
offense that a deadly weapon was used), 19.05 (providing that criminally
negligent homicide is a state jail felony).





[14]We
note that below, Appellant raised involuntariness regarding his jury waiver at
the punishment phase, but he does not raise it on appeal.

 





[15]State
v. Savage, 933 S.W.2d 497, 499 (Tex. Crim. App. 1996); see
also Tex. Code Crim. Proc. Ann.
art. 42.01, ' 1(7)
(Vernon Supp. 2004-05).





[16]Tex. Code Crim. Proc. Ann. art.
42.01, '
1(7); Savage, 933 S.W.2d at 499.





[17]See Tex. R. App. P. 21.1.





[18]See
id.; MacDonald v. State, 105 S.W.3d 749, 752-53 (Tex. App.CEl
Paso 2003, pet. ref=d).





[19]Perkins
v. Court of Appeals, 738 S.W.2d 276, 280‑81 (Tex. Crim. App.
1987) (orig. proceeding); Wright v. State, 158 S.W.3d 590, 595 (Tex.
App.CSan
Antonio 2005, pet. ref=d); see
also Tex. R. App. P. 21.1.





[20]See Tex. Gov=t Code Ann. '
493.004 (Vernon 2004).





[21]Tex. Penal Code Ann. '
12.34(a) (Vernon 2003).





[22]Id. '
12.34(b).





[23]See Tex. Gov=t Code Ann. '
507.001(a) (Vernon 2004).





[24]29
S.W.3d 642, 644-45 (Tex. App.CHouston [14th
Dist.] 2000, pet. ref=d).





[25]Riley
v. State, 328 S.W.2d 306, 307 (Tex. Crim. App. 1959); see
also

Jenke
v. State, 487 S.W.2d 347, 348 (Tex. Crim. App. 1972).





[26]Tooke
v. State, 642 S.W.2d 514, 518 (Tex. App.CHouston
[14th Dist.]  1982, no pet.).





[27]Id. at
516.





[28]Id.
(emphasis added).





[29]Id. at
518.





[30]Id.





[31]Id.





[32]State
v. Dickerson, 864 S.W.2d 761, 764 (Tex. App.CHouston
[1st Dist.] 1993, no pet.) (op. on reh=g).





[33]Id. at
762-63.





[34]Id.





[35]Id.





[36]Id.





[37]Id. at
763.





[38]Id.
(emphasis in original).





[39]Id. at
764.





[40]121
S.W.3d 768, 769-73 (Tex. Crim. App. 2003)
(Cochran, J., concurring).





[41]Id. at
771‑72 (emphasis added).





[42]See Tex. R. App. P. 21.1.